UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE BAY AREA ROOFERS HEALTH & WELFARE TRUST FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GUDGEL YANCEY ROOFING INC.,<br><br>Defendant. | Case No. 16-CV-04310-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Plaintiffs Board of Trustees of the Bay Area Roofers Health & Welfare Trust Fund; Pacific Roofers Pension Plan; East Bay/North Bay Roofers Vacation Trust Fund, Bay Area Counties Roofing Industry Promotion Fund, Bay Area Counties Roofing Industry Apprenticeship Training Fund; and Doug Ziegler, as Trustee (collectively, "Plaintiffs"), are multi-employer employee benefit plans. Plaintiffs bring this action against Defendant Gudgel Yancey Roofing, Inc. ("Defendant') alleging violations of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. ECF No. 1 ("Compl."). Before the Court is Defendant's motion to dismiss. ECF No. 15

1

Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

("Def. Mot."). The Court finds this matter appropriate for determination without oral argument and hereby VACATES the hearing set for December 8, 2016. *See* Civil L.R. 7-1(b). Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS Defendant's motion to dismiss.

## I.   BACKGROUND

### A.   Factual Background

Plaintiffs are multi-employer employee benefit funds. Compl. ¶ 7. Plaintiffs receive contributions from individuals who are parties to a collective bargaining agreement ("CBA") that exists between Local 81 of the United Union of Roofers, Waterproofers and Allied Workers, AFL-CIO ("Local 81"), and the Associated Roofing Contractors of the Bay Area Counties, Inc. ("Associated Roofing Contractors"). *Id.* ¶ 7; *see also* Compl. Ex. A.

Defendant is a roofing, waterproofing, and contracting business in Sacramento County, California. Compl. ¶ 9. According to the Complaint, Defendant is bound to the CBA between Local 81 and the Associated Roofing Contractors, and thus Defendant must comply with the terms of the CBA. *Id.* ¶¶ 11–13. Specifically, Plaintiffs allege that Defendant became bound to the CBA "by way of accepting a public works contract to train apprentices." *Id.*

According to Plaintiffs, "Defendant accepted" a "Referral Page" from Local 81, and Defendant thereby became bound to the CBA. *Id.* ¶ 13. Plaintiffs attached to their Complaint a copy of the Referral Page. Compl., Ex. B. The Referral Page is on Local 81 letterhead and is dated August 25, 2015. *Id.* The Referral Page lists the name "Isidro Quevedo" and states that the individual is to "Report To: Gudgel Yancey Roof." *Id.* The Referral Page is signed by a Local 81 "Member" and a "Dispatcher." *Id.* The Referral Page contains the following "Note":

> By accepting this referral, the individual employer recognizes [Local 81] as the majority collective bargaining representative of his or its employees employed in the counties covered by the [CBA] between Local 81 and the Associated Roofing Contractors of the Bay Area Counties and recognizes the Union as the exclusive collective bargaining agent for such employees and further agrees that it is bound to said [CBA] including all the wages, hours, and all other terms and conditions of such [CBA] including the payment of all

2
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

wage scales and all trust fund contributions specific and required by said [CBA].

*Id.*

Plaintiffs also attached to their Complaint "a true and correct copy of the current [CBA]" to which Plaintiffs allege that Defendant became bound by accepting the Referral Page. Compl. ¶ 13. The title page of the CBA is dated August 1, 2011–July 31, 2015. Compl., Ex. A. The CBA requires employers "to make timely monthly contributions to the Trust Funds for fringe benefits for its covered employees and to submit to requested payroll audits for verification of accurate employer contributions to employee benefits administered by Plaintiffs." Compl. ¶ 13. Payments that are "received later than the last day of the month following the month in which the hours were worked are delinquent and liquidated damages shall be assessed on all delinquent contributions to the Trust Funds along with interest." *Id.* ¶ 14. Under the CBA, employers are also bound to certain trust agreements, including the trust agreement for the Health and Welfare Trust ("Trust Agreement") which obligates employers "to make timely contributions to the Trust adopted by the Board of Trustees of the Health and Welfare Trust." *Id.* ¶ 16; *see also* Compl., Ex. C.

According to Plaintiffs, Defendant "failed to submit [to Plaintiffs] its employer contribution report including payment owed for the months of April and May 2016," as required by the CBA and Trust Agreement. *Id.* ¶ 19. Further, on March 11, 2016, Defendant "initially agreed to submit to an audit of its payroll records but was refusing to provide [to Plaintiffs] its DE-9C (Quarterly Contribution Return and Report of Wages) or Cash Disbursement Journal for the audit period of July 1, 2013 through September 30, 2013." *Id.* ¶ 22.

On April 4, 2016, Defendant sent an email to Plaintiffs stating that Defendant was not a signatory to the CBA, and that Defendant would "only be providing records to Plaintiff that apply to apprentice contributions." *Id.* ¶ 23.

On April 6, 2016, Plaintiffs told Defendant that Defendant "is bound to the CBA, including

3
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

applicable Trust Agreement(s)" since Defendant "accepted the public works contract award referral." *Id.* ¶ 24. Plaintiffs thus told Defendant that "the Trust Funds' Auditor would need access to the DE-9C (Quarterly Contribution Return and Report of Wages) or Cash Disbursement Journal in order to ascertain whether Defendant was correctly reporting all its required hours to the Trust Funds." *Id.* Plaintiffs sent subsequent requests to Defendant "but Defendant has failed to submit to an audit of its payroll records in accordance with the applicable CBA and/or Trust agreement(s)." *Id*. ¶ 25. Further, according to the Complaint, "Defendant is continuing to breach [the CBA] by fail[ing] to pay monies due thereunder to Plaintiffs." *Id.* ¶ 26.

### B. Procedural History

Plaintiffs filed a Complaint against Defendant in this Court on July 29, 2016. *See* Compl. Plaintiffs' Complaint alleges three causes of action.

Count One asserts that the CBA and applicable Trust Agreement authorize Plaintiffs "to conduct an audit of the payroll books and records of employers," and requests injunctive relief. *Id.* ¶¶ 28–31. Plaintiffs thus "seek an injunctive order from this Court, requiring an audit of the time period July 1, 2013 through September 30, 2013, and an order requiring all unpaid or underpaid contributions, liquidated damages, and pre-judgment interest revealed to be due and owing as a result of any such audit." *Id.* ¶ 32.

Count Two alleges that Defendant violated ERISA, 29 U.S.C. § 1145, by failing to submit monthly transmittals and make contributions to the Trusts. *Id.* ¶ 37. Specifically, in addition to refusing an audit for the period of July 1, 2013 through September 30, 2013, Defendant has "failed to submit employer contribution report [sic] including principal amount, liquidated damages, and interest owed for the months of April and May 2016." *Id.* ¶ 39. Plaintiffs further allege that Defendant's failure to submit reports and to make contributions constitute breach of the fiduciary duty owed pursuant to ERISA. *Id.*

Count Three alleges that Defendant breached the CBA, in violation of the LMRA, 29 U.S.C. § 185(a), by failing to pay employer contributions as required by the CBA. *Id. ¶¶* 42–45.

On September 2, 2016, Defendant filed a motion to dismiss the Complaint. Def. Mot. at 1. Specifically, Defendant argued that Plaintiffs' Complaint failed to state a claim because the Complaint fails to allege sufficient facts to establish that Defendant was bound to the CBA between Local 81 and the Associated Roofing Contractors. *Id*. at 2.

On September 15, 2016, Plaintiffs filed a response in opposition to Defendant's motion to dismiss. ECF No. 16 ("Pl. Opp."). Plaintiffs asserted that their Complaint adequately alleged that Defendant was bound to the CBA. *Id.* at 2. In support of its opposition to Defendant's motion to dismiss, Plaintiffs attached a declaration and several exhibits in support of Plaintiffs opposition. *See* Pl. Opp., Exs. 1–5.

On September 23, 2016, Defendant filed a reply. ECF No. 17 ("Def. Reply"). Defendant again argued that Plaintiffs' Complaint failed to state a claim, and Defendant further asserted that Plaintiffs' additional arguments and documents attached to its response were not alleged or included in the Complaint, and thus could not be considered in ruling on Defendant's motion to dismiss. *Id.* at 1–4.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

5
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

unlawfully." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1061, 1064 (9th Cir. 2011). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179 1183 (9th Cir. 2004).

### B.    Leave to Amend

If the court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original).

### III.   DISCUSSION

Defendant argues in its motion to dismiss that Plaintiffs cannot state a claim in Counts One through Three because Defendant is not bound by the CBA between Local 81 and the Associated

6
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Roofing Contractors. Def. Mot. at 2. Accordingly, Defendant argues, it cannot be held liable under ERISA or the LMRA for failure to comply with the CBA's and Trust Agreement's contribution and audit requirements. *Id.* at 5. Plaintiffs contend, however, that although Defendant is not a signatory to the CBA, Defendant has nonetheless become bound to the CBA. Pl. Opp. at 3–4.

Specifically, Plaintiffs rely on the "adoption by conduct" doctrine and the Ninth Circuit's decision in *Southern California Painters & Allied Trade District Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1131–33 (9th Cir. 2004), to argue that Defendant became bound by the CBA because Defendant accepted a Referral Page—and, the Court assumes from Plaintiffs' factual allegations, accepted a corresponding apprentice—and because Defendant complied with the terms of the CBA. Pl. Opp. at 5–6, 8. Thus, to resolve the instant motion, the Court must decide whether Plaintiffs have adequately alleged facts that show that Defendant became bound to the CBA between Local 81 and the Associated Roofing Contractors by its conduct. Accordingly, the Court first examines the case law regarding the adoption by conduct doctrine. The Court then examines whether Plaintiffs' factual allegations here, taken as true, are sufficient to show that Defendant bound itself to the CBA by its conduct.

    **i.**    **The Adoption by Conduct Doctrine**

The Ninth Circuit has recognized that a party who is not a signatory to a CBA "can adopt a labor agreement by conduct." *Best Interiors, Inc.*, 359 F.3d at 1131–33. In determining whether an employer has adopted a CBA by conduct, "the relevant inquiry is whether the party has displayed 'conduct manifesting an intention to abide by the terms of the agreement.'" *Id.* at 1133 (quoting *NLRB v. Haberman Constr. Co.*, 651 F.2d 356 (5th Cir. 1981) (en banc)).

In *Best Interiors*, the Ninth Circuit considered whether an employer had manifested "an intention to abide by the terms of" a CBA. *Id.* In that case, the defendant Best Interiors was a

7
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

signatory from 1998 until 2000 to an industry-wide CBA. *Id.* at 1128. The CBA expired in 2000, and Best Interiors informed the union that it would cease to be a party to the CBA. *Id.* An employer association negotiated another CBA with the union that spanned from 2000 until 2003. *Id.* Although Best Interiors did not sign the 2000-2003 CBA, the Ninth Circuit held that "[a] jury could conclude that, by its conduct, Best adopted the" new 2000-2003 CBA because Best Interiors "voluntarily implemented the new terms of the Agreement by applying them to its drywall finishers," and that Best Interiors had "even g[iven] the workers a dollar per hour wage increase that was mandated under the new" 2000-2003 CBA. *Id.* at 1133.

In so holding, the Ninth Circuit in *Best Interiors* considered case law from other Circuits in which courts found that an employer had manifested an intention to adopt a CBA, despite not being a signatory to the CBA. *Id.* at 1133. For example, in *Haberman Construction Company*, the Fifth Circuit upheld the National Labor Relation Board's ("NLRB") finding that an employer was bound to a CBA because the record showed that the employer had "contribut[ed] to the Union's trust funds from May 1973 through February 1977," used "union members exclusively," used the union for referrals, and increased wages to match the union wage scale. *Haberman*, 641 F.2d at 355–56; *see Best Interiors*, 359 F.3d at 1133 (quoting and discussing *Haberman*). Similarly, in *Arco Electric Company v. NLRB*, the Tenth Circuit held that an employer that was a party to a CBA for several years, but never assented to a newly negotiated CBA, nonetheless "considered itself bound to the [new CBA] for a period of over 15 months after [the new CBA] became effective" because the employer "availed itself of the benefits of the union hiring hall for referral of employees," "deducted union assessments and remitted them to [the union]; made appropriate deductions for various funds," "reported the fund payments on forms provided [under the CBA]" and paid its employees the CBA wage scale. 618 F.2d 698, 699–700 (10th Cir. 1980); *see Best Interiors*, 359 F.3d at 1133 (relying on *Arco*).

8

Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Thus, as this case law demonstrates, courts considering whether an employer has adopted a CBA by conduct "have emphasized, among other factors, the payment of union wages, the remission of union dues, the payment of fringe benefit contributions, the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction, such as that created by grievance procedures." *Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004) (citing case law across Circuits); *see also Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 448 (4th Cir. 2015) (finding, after joining other Circuits in recognizing the adoption-by-conduct doctrine, that an employer manifested an intent to be bound to a CBA where the employer signed a Letter of Assent and made contributions to a trust fund in accordance with the CBA for thirteen years); *Alaska Trowel Trades Pension Trust v. Rady Concrete Const., LLC*, 2016 WL 6518430 (D. Ala. Nov. 2, 2016) (citing *Best Interiors*, *Bricklayers*, and other cases across Circuits to find that an employer had not adopted a CBA by its conduct).

### ii. Plaintiffs' Factual Allegations Regarding Defendant's Conduct

Here, Plaintiffs rely on *Best Interiors* and the "adoption by conduct doctrine" to argue that Defendant, in requesting and accepting apprentices from Local 81 and complying with the terms of the CBA, became bound by the CBA. Pl. Opp. at 5–6, 8. As discussed further below, the Court agrees with Defendant that the allegations contained within Plaintiffs' Complaint are not sufficient to show that Defendant bound itself to the CBA by its conduct.

Significantly, the only allegation in the Complaint that refers to Defendant's conduct binding Defendant to the CBA is that Defendant became bound to the CBA "by way of accepting a public works contract to train apprentices" and that "Defendant accepted" a "Referral Page." Compl. ¶ 12. The single "Referral Page" that Plaintiffs allege that Defendant accepted is attached to Plaintiffs' Complaint. Compl., Ex. B. The attached "Referral Page" is on Local 81 letterhead

and is dated August 25, 2015. *Id.* It contains a "Note" stating that "[b]y accepting this referral, the individual employer recognizes [Local 81] as the majority collective bargaining representative of his or its employees employed in the counties covered by the [CBA] . . . and further agrees that [the employer] is bound to said [CBA] including all the wages, hours, and all other terms and conditions of such [CBA] including the payment of all wage scales and all trust fund contributions specific and required by said [CBA]." *Id.* The Referral Page is signed by a Local 81 "Member" and a "Dispatcher." *Id.*

As Defendant asserts in its motion to dismiss, the Referral Page "is filled out by the union, not [Defendant]," and the Complaint contains "no allegations regarding who at [Defendant] purportedly received" the Referral Page or when the Referral Page was "accepted" by Defendant. *See* Def. Mot. at 7; *see also* Compl., Ex. B. Indeed, the only Referral Page that Defendant allegedly accepted is dated August 25, 2015, Compl. Ex. B, but, the title page of the CBA attached to Plaintiffs' Complaint is dated "August 1, 2011–July 31, 2015," and Plaintiffs request an audit of Defendant from "the time period July 1, 2013 through September 30, 2013," a time well before the August 25, 2015 date. Compl. Exs. A & B; Compl. ¶ 22.

Significantly, "the extent of [Defendant's] liability" is necessarily "dependent upon whether [Defendant] was a party to the [CBA] during the time it employed" the apprentices and did not comply with the applicable CBA in effect. *See Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 376 (7th Cir. 1985). Here, Plaintiffs' Complaint contains no factual allegations suggesting when Defendant accepted the Referral Page attached to the Complaint or when Defendant first began accepting apprentices, let alone how many or over what time period. *See* Compl. ¶¶ 11–13. Thus, the Complaint lacks sufficient factual allegations to show that Defendant bound itself to the CBA such that it is liable for the misconduct alleged in the Complaint. *See Gariup*, 777 F.2d at 376; *see also Sutherland v. Francis*, 2013 WL 2558169, at *4 (N.D. Cal. June

10
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

10, 2013) (dismissing complaint in breach-of-contract case where the plaintiff alleged only "vague stretches of time" rather than a contract date).

Apart from Plaintiffs' vague and unspecified allegation that "Defendant accepted" a single "Referral Page" dated August 25, 2015, Plaintiffs' Complaint contains no further facts to suggest that Defendant intended to be bound by the CBA, let alone when Defendant became bound. Indeed, Plaintiffs themselves acknowledge that Plaintiffs do not "directly [allege] in the Complaint" that Defendant ever "pa[id] union wages and benefits" or that Defendant ever "voluntarily implement[ed] the terms of the CBA and Trust Agreements." Pl. Opp. at 2. As discussed above, courts have found these factors significant in finding that an employer bound itself to a CBA through its conduct. *See, e.g.*, *Bricklayers*, 385 F.3d at 766; *Best Interiors*, 359 F.3d at 1132–33.

Here, Plaintiffs' Complaint alleges only that Defendant "has failed to submit its employer contribution report including payment owed for the months of April and May 2016" and that Defendant "initially agreed to submit to an audit of its payroll records" but refused to provide essential documents to Plaintiff. Compl. ¶ 22. Plaintiffs' allegations demonstrate only that Defendant has *not* complied with the CBA; the Complaint contains no indication as to when, if ever, Defendant was in compliance with the CBA or when, if ever, Defendant implemented the CBA's terms. *See generally* Compl. ¶¶ 14–22.

The threadbare nature of the factual allegations in Plaintiffs' Complaint is made clear by the allegations that Plaintiffs *do* raise in their opposition to Defendant's motion to dismiss. In their opposition, Plaintiffs contend that Defendant accepted "[a]pprentice [r]eferrals" from Local 81 "[o]n multiple occasions over a period of many years." *Id.* at 6. Plaintiffs assert that "Defendant through its agents Miguel Troy (on August 25, 2015) and Mike Sperling (on November 19, 2012), requested and accepted apprentices from the Roofers Local 81" apprentice

11
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

program "by accepting [a Referral Page], which contain language binding [Defendant] to the CBA." *Id.* at 8.  Moreover, Plaintiffs attached to its opposition several documents that show that "Defendant through its office manager and agent, Nancy White, completed and agreed to train apprentices from the Roofers Local 81 JATC program" and that "Defendant through its then superintendent and agent Mike Sperling also completed a Request for Dispatch of Apprentice Form requesting apprentice(s) to report to Defendant's jobsite on November 15, 2012." *Id.* at 6–7; *see* Pl. Opp., Exs. A&B.  Plaintiffs also argued in its response that Defendant consented to be bound by the CBA by "reporting and paying fringe benefits to the Trust Funds pursuant to the CBA." *Id.* at 10; *see also* Pl. Opp., Exs. C &D.  According to Plaintiffs, this "conduct unequivocally shows Defendant's intent to be bound to the CBA for those apprentices."  Pl. Opp. at 10.

However, as discussed above, Plaintiffs' Complaint does not contain the above-described facts.  *See* Pl. Opp. at 2.  To the contrary, the facts to which Plaintiffs refer in their opposition are largely drawn from exhibits that Plaintiffs attached to their opposition.  *See* Pl. Opp., Exs. 1–5.  For purposes of ruling on a motion to dismiss under Rule 12(b)(6), the Court is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).  Accordingly, in ruling on Defendant's motion to dismiss, the Court may not consider the declaration and exhibits that Plaintiff has attached to its opposition, nor may the Court consider the facts that Plaintiff asserts only in its opposition.  *See id.*

Considering only Plaintiff's complaint and the exhibits attached to Plaintiffs' Complaint, the Court agrees with Defendant that Plaintiffs have failed to state a claim for relief.  As stated above, the Complaint alleges only that "Defendant accepted," at an unspecified time, a single Referral Page, dated August 25, 2015.  Compl. ¶ 12.  The Complaint contains no allegations

12
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

suggesting who at Defendant accepted the Referral Page, when it was accepted, or when Defendant began accepting documents such as the Referral Page. *See generally id*. ¶¶ 12–14. At the same time, the Complaint contains no indication that Defendant was ever in compliance with the CBA or Trust Agreement. *See* Pl. Opp. at 2. The sparse and unspecified factual allegations in Plaintiffs' Complaint, taken as true, fall far short of evincing the type of conduct that courts have found sufficient to manifest an employer's intent to abide by the terms of a CBA. *See, e.g.*, *Rady Concrete Const. LLC*, 2016 WL 6518430, at *6 (finding that an employer had not adopted a CBA by conduct where "[u]nlike in *Best Interiors* . . . [the employer] had not 'voluntarily implemented' or 'fully complied with' the [CBA]"); *see also Fiorentino v. Bricklayers & Allied Craftworkers Local 4 Pension Plan*, 2016 WL 5723660 (D.N.J. Sept. 30, 2016) (finding the plaintiff "had not come close to" establishing that an employer adopted a CBA by conduct where there was no evidence that the employer had, for example, remitted union dues, paid union wages, or submitted to an audit).

Accordingly, because the Complaint does not sufficiently allege facts that demonstrate Defendant's intent to be bound by the CBA, and because Plaintiff's arguments in response to Defendant's motion to dismiss are largely drawn from documents that the Court cannot consider in ruling on Defendant's motion, the Court GRANTS Defendant's motion to dismiss Plaintiffs' Complaint. Leave to amend will be granted because the Court finds that amendment may not necessarily be futile. *Lopez*, 203 F.3d at 1127 (holding that leave to amend should be granted unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts").

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss. Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs

13
Case No.16-CV-04310-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

shall do so within (30) days of this Order.  Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies in this Order will result in dismissal with prejudice of Plaintiffs' claims.  Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated:  December 5, 2016

_____
LUCY H. KOH
United States District Judge